COMMONWEALTH vs. GILBERTO TORRES.

No. 07-P-281.

Hampden. December 11, 2007. - May 19, 2008.

Present: Cowin, Brown, & Kafker, JJ.[1]

Further appellate review granted, 451 Mass. 1108 (2008).

*Controlled Substances. Practice, Criminal,* Assistance of counsel, Challenge to jurors, Deliberation of jury. *Constitutional Law,* Assistance of counsel. *Jury and Jurors. "School Zone" Statute.*

A criminal defendant claiming ineffective assistance of trial counsel did not demonstrate any prejudice arising from counsel's failure to use available peremptory challenges to remove two jurors who had survived his attempted challenges for cause, and whom the judge found impartial after voir dire. [724-726]

A trial court judge did not, in ruling on a criminal defendant's motion for a mistrial, made after guilty verdicts were first reported and following a poll of the jury in which one juror responded, "Not guilty," err in focusing on the question whether the juror in fact had a problem personal to her that would be a valid ground for discharge, or in determining, based on the judge's observations of the juror's testimony and demeanor during two interviews, that the juror was impartial and would perform her obligations as juror [730-732]; further, the judge did not commit an abuse of discretion by ordering the jury to resume deliberations and in declining to declare a mistrial, where the events both before and after the request for the juror's removal did not indicate that the juror's will was overborne by her desire to leave and therefore that the jury's eventual guilty verdict was not unanimous [732-735]. Brown, J., dissenting.

There was no merit to the argument of a criminal defendant indicted for commission of a drug offense within a school zone, in violation of G. L. c. 94C, § 32J, that the device used to measure the distance between the location of the drug transaction and the school in question was not accurate. [735]

INDICTMENTS found and returned in the Superior Court Department on July 26, 2005.

The cases were tried before *Judd J. Carhart,* J.

[1]Justice Cowin participated in the deliberation on this case and authored this opinion prior to his retirement.

*Andrew S. Crouch* for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant, Gilberto Torres, was convicted by a Superior Court jury of distribution of a class A substance, see G. L. c. 94C, § 32(*b*), and commission of a drug offense in a school zone, see G. L. c. 94C, § 32J. He thereafter pleaded guilty to a subsequent offender portion of the distribution charge. On appeal, he asserts that the convictions were infected by error in three respects: (1) ineffective assistance of trial counsel resulted in the seating of two jurors who should have been removed by peremptory challenges; (2) there should have been a mistrial because of the behavior of a problem juror; and (3) evidence that the drug transaction took place within 1,000 feet of a school should have been excluded because the Commonwealth failed to establish that the device used to measure the distance was accurate. We affirm the judgments.

The Commonwealth proceeded on the theory that the defendant participated as a joint venturer in a drug sale by locating a seller at the request of a potential buyer. The defendant claimed mistaken identity, contending that it was his brother who was present at the time. Apart from the issue of measurement with respect to the school zone charge, the defendant does not challenge the convictions on the grounds of sufficiency of the evidence. We therefore set forth facts only as necessary in connection with our discussion of each of the claims on appeal.

1. *Ineffective assistance of counsel.* The defendant argues that missteps by his counsel during jury selection prejudiced him by resulting in the seating of two potentially hostile jurors who could, and should, have been challenged. To vacate a conviction on the ground of ineffective assistance of counsel, a defendant must demonstrate that his attorney's performance fell measurably beneath what is standard for an ordinary fallible lawyer, and that his action or inaction deprived the defendant of a substantial ground of defense. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Here, the defendant contends that his counsel's lack of familiarity with the jury selection process resulted in deprivation of his constitutional right to be tried by an impartial jury.

The relevant events unfolded as follows.[2] After excusing several potential jurors for various reasons, and with the defendant's counsel asserting no challenges for cause, the judge declared the venire indifferent and fourteen jurors were seated. The prosecutor stated that she was satisfied with the jury, at which point defense counsel exercised two peremptory challenges and the challenged jurors were replaced. It was not until this point in the process that defense counsel indicated that he wished to challenge two jurors (no. 11 and no. 28) for cause because each had a close relative in law enforcement. Although the judge informed counsel that the time for the exercise of challenges for cause had passed, he agreed to conduct a voir dire of each juror, following which defense counsel stated that he was satisfied, and the judge found each to be impartial and ordered them seated. Defense counsel did not exercise a peremptory challenge of either juror despite having four peremptory challenges that he had not employed.

On appeal, the defendant essentially concedes that he had no basis for removal for cause with respect to either of the jurors in question. The husband of juror no. 11 previously had been chairman of the board of selectmen of Brimfield. The board acts in the capacity of police commissioner of the municipality, a function that is one of many imposed upon that town's selectmen. Juror no. 28's father was a police officer in Chicopee. The crime charged took place in neither Brimfield nor Chicopee, but in Holyoke. Furthermore, it is generally understood that employment in a law enforcement capacity on the part of a juror or a relative is not by itself a ground that justifies a challenge for cause. See *Commonwealth* v. *Ortiz*, 50 Mass. App. Ct. 304, 308 (2000), citing *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 460-461 (1989). It follows that defense counsel's lack of familiarity with the order in which challenges are asserted had no effect with respect to his challenges for cause; the judge

---

[2]We agree with the Commonwealth that claims of ineffective assistance of counsel are ordinarily best adjudicated on the basis of a motion for new trial where they can be considered by the trial judge and where additional evidence can be taken if appropriate. See *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210 n.5 (2002); *Commonwealth* v. *Zinser*, 446 Mass. 807, 809 n.2 (2006). In the present case, however, the record is sufficient to enable us to decide the claim as part of the direct appeal.

considered the challenges on the merits and acted well within his discretion in denying them.

Thus, the defendant's complaint about his counsel's handling of jury selection comes down to nothing more than a claim that he was prejudiced by the fact that counsel did not use available peremptory challenges to remove the two jurors who had survived his challenges for cause. Counsel's lack of experience and confusion with respect to the order in which challenges were to be asserted had no bearing on this, and the defendant was not prejudiced by any such failing. The defendant had unexpended peremptory challenges and an opportunity to exercise them, and the question is whether his decision not to challenge the two jurors at that time constituted ineffective assistance of counsel.

Whether to exercise a peremptory challenge of a particular juror is a question of strategy addressed to the judgment of the defendant and his counsel. Where counsel is alleged to have provided ineffective assistance by virtue of a tactical or strategic judgment claimed to have been erroneous, that judgment must have been "manifestly unreasonable" before there will be relief from a conviction. *Commonwealth* v. *Myers*, 51 Mass. App. Ct. 627, 632 (2001), quoting from *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). The Supreme Judicial Court has applied the concept of ineffective assistance of counsel to the withholding of peremptory challenges as follows: "The defendant contends that failure of defense counsel to challenge these two jurors amounted to ineffective assistance of counsel. We disagree. In response to the judge's questions regarding their ability to be impartial, each juror expressed a belief that he or she would be able to be fair and impartial throughout the trial. Since defense counsel was satisfied that the jurors could be impartial, there was no reason to challenge the jurors." *Commonwealth* v. *Mello*, 420 Mass. 375, 396 (1995). That is the case here.

2. *The problem juror.* The defendant asserts that it was error for the judge to deny his motion for a mistrial following a poll of the jury in which a juror responded, "Not guilty." Because of the unusual circumstances, we recite the facts in some detail.

Juror no. 14 gave notice that she might create difficulties when she raised her hand, apparently in an effort to speak, during defense counsel's closing argument. No action was taken at

that time, and after instructions, the jury retired to deliberate. In about one-half hour, the judge received a notice from the jury room stating: "On this jury there is an individual unable to deliberate in a coherent and logical manner on this issue. I seek your guidance." The juror referred to was subsequently identified as juror no. 14. With the agreement of both parties, the judge interviewed the jury foreman in the presence of the defendant and both counsel. Despite the efforts of the judge to discourage the divulging of any jury deliberations, the foreman reported first that juror no. 14 was "of the mind, because of past experience with police, that all police are bad, so it doesn't matter what they say," and then that the juror "doesn't believe that is heroin because she can't see it . . . and anyone can sign that sheet." The judge managed to cut off any further revelations, subsequently acknowledging that "I have gained some information that probably shouldn't have been brought to my attention."

The judge proceeded to engage counsel in a discussion regarding what, if any, steps to take. The exchange was interrupted by a court officer who reported that, when he entered the jury room to request that the foreman step out (prior to his interview by the judge), juror no. 14 stated: "Are you going to release me yet? I'm going home yet?" Again with the agreement of counsel, the judge recalled the jury, read them the note, and instructed them "to give this case your full, fair consideration, to speak to your other jurors, to listen to them, and to engage in a dialogue."[3] As the judge concluded his remarks, juror no. 14 raised her hand; the judge stated that he was unable to speak with a juror individually, and directed the jury to resume deliberations.

In little more than one hour, the judge received two more notes from the jury room. The first, signed by the foreman, stated: "Your Honor, we have a juror who feels the criminal justice system is corrupt. The juror cannot comprehend the evidence before them. The juror does not even want to be here and wants to be excused. We are not trying to sway the decision of this juror. However, this person cannot agree to the writing on the State Massachusetts documents. We feel that the two

---

[3] While directed to the jury as a whole, the judge's admonition was plainly delivered for the benefit of juror no. 14.

alternate jurors, either one, can understand the evidence before us. We ask that an alternate juror who can comprehend the evidence be swapped with this juror in question."

The second note was signed by juror no. 14. Apart from certain writing that was incomprehensible, the note stated: "I don't want to stay on the jury. . . . Not guilty, I want to go home. May I never go through this again. Now I got to, got to . . . home. Guilty. So I bring in . . . so I bring in to go home." Based on the disclosure that the juror refused to consider the testimony of police officers, the prosecutor requested that the juror be discharged, citing, among other authorities, G. L. c. 234A, § 39, as amended by St. 1984, c. 189, § 158 ("The court shall have the discretionary authority to dismiss a juror at any time in the best interests of justice. . . . The court shall have authority to excuse and discharge a juror participating in jury deliberations after a hearing only upon a finding of an emergency or other compelling reason"). Defense counsel opposed the request and asked that a voir dire of the juror be conducted.

The judge agreed and questioned juror no. 14 in the presence of the defendant and both counsel. After referring to her note stating that she wished to go home, and advising her that she should not disclose anything about the deliberations, he asked: "I want to know whether or not you would have some difficulty in being fair to both sides, the prosecution and the defendant." The juror responded: "Well, I will tell you what, between the evidence and everything else, I don't agree with them." The judge then asked: "[I]s there anything in your mind that says you could not be fair to both sides?" to which the juror answered: "I've tried, yeah." The judge continued: "I asked you at the outset of the case whether you would believe or disbelieve police officers just because they are police officers." The juror answered: "I don't believe the true or the false. I decide it for myself, because there is good and bad in every profession."

The prosecutor pressed her motion seeking discharge of the juror, arguing that it appeared that the juror's desire to be released from jury duty was so strong that she would agree to any verdict in order to be relieved. The judge then recalled the juror, stat-

ing: "I am probably not going to let you go home. I want to make sure you will still not compromise your view on this case because you want to go home. . . . I want to know your desire to go home is not going to somehow overcome your ability to be a good, fair juror." The juror replied: "No, sir. I want the truth on the paper, sir."

The judge denied the Commonwealth's motion to discharge the juror,[4] and deliberations resumed. In about forty-five minutes, the jury returned with verdicts of guilty on both charges. As the court room clerk requested that the jury acknowledge collectively that the verdict of guilty on the first charge (distribution of a class A substance) was unanimous, the judge noticed that juror no. 14 had not responded. He confronted her directly, stating: "You haven't answered. Is that your verdict?" The juror responded: "Not guilty."

The defendant moved orally for a mistrial. Asked by the judge for the grounds, his counsel replied only that "at this point they are not going to reach a verdict." The judge denied the defendant's motion, informed the jury that their verdict must be unanimous, and directed that they continue their deliberations. In approximately one-half hour, the jury returned, again with guilty verdicts on both counts. On this occasion, the jury were polled individually, with each juror, including juror no. 14, agreeing with the verdicts.

The specific ruling to which the defendant takes exception is the judge's denial of his motion for a mistrial after guilty verdicts were first reported and juror no. 14 responded, "Not guilty." The defendant argues in this regard that that ruling cannot be examined effectively without reference to the events that preceded it, for it is those events which support a conclusion that the jury was hopelessly deadlocked, and that juror no. 14 ultimately agreed with a verdict that she opposed merely because she wanted to end her jury service. We agree that a valid conviction

---

[4]The judge stated: "For the record, I will find the juror answered that her will or her desire to go home is not being overborne or will not overbear her ability to continue to deliberate and have her view made known to the other jurors, whatever that view may be." While the judge stated the finding in terms of the juror's statement, we are satisfied that he credited that statement and made an independent finding regarding the juror's commitment to the process.

can come about only by means of a unanimous vote of an impartial jury. See *Commonwealth* v. *Haywood,* 377 Mass. 755, 769 (1979). However, that proposition has two components, each of which must be considered separately.

We look first to the judge's decision to reject the Commonwealth's contention that juror no. 14 had been shown not to be impartial, and consequently to retain her as a deliberating juror. "The discharge of a deliberating juror is a sensitive undertaking and is fraught with potential for error. It is to be done only in special circumstances, and with special precautions." *Commonwealth* v. *Connor,* 392 Mass. 838, 843 (1984). "If, at any time after the final submission of the case by the court to the jury and before the jury has agreed on a verdict, a juror dies, or becomes ill, or is unable to perform his duty for any other good cause shown to the court, the court may order him to be discharged." G. L. c. 234, § 26B, as amended by St. 1979, c. 344, § 9A. See G. L. c. 234A, § 39 (deliberating juror may be discharged only in emergency or for other compelling reason). " 'Good cause' includes only reasons personal to a juror, having nothing whatever to do with the issues of the case or with the juror's relationship with his fellow jurors." *Commonwealth* v. *Connor, supra* at 844-845. In determining whether "good cause" for discharge exists, a trial judge must be cautious not to "inquire into the deliberative process of the jury." *Commonwealth* v. *Rodriguez,* 63 Mass. App. Ct. 660, 672 (2005), quoting from *Commonwealth* v. *Kincaid,* 444 Mass. 381, 391 (2005).

While considerations personal to a juror on the one hand, and the issues in the case or the relationship among jurors on the other, are different analytically, they may be difficult to separate in actual practice. See, e.g., *Commonwealth* v. *Swafford,* 441 Mass. 329, 334-337 (2004). As we said in *Commonwealth* v. *Rodriguez, supra* at 674, the path is clear in "the ordinary case of juror illness or other personal problems, such as drug or alcohol abuse, where the reason for the discharge is clearly separate from the juror's views on the issues of the case or the juror's relationship with fellow jurors." It is when those factors interact, and disputes of substance intersect with personal problems, that analysis becomes complicated. In *Commonwealth*

v. *Swafford*, *supra* at 337, a juror's "idiosyncratic response" to the behavior of another juror justified the first juror's discharge although the problem "had its roots in perceived slights against her by another juror during the course of deliberations." The court relied on the finding of the trial judge that the problem was personal to the juror, thus satisfying the requirement that good cause for discharge cannot be based on disagreements on the merits or unpleasantness between jurors. See *Commonwealth* v. *Connor*, 392 Mass. at 844-845. The process becomes even more difficult because of the need not to delve into juror deliberations, recognizing "that an unreasonably stubborn or eccentric juror will be seated is an unavoidable risk of the jury system." *Id.* at 844.

The present case potentially poses the same problem. The judge resolved it by focusing correctly on the question whether the juror in fact had a problem personal to her that would be a valid ground for discharge. To this end, he interviewed the juror twice, eliciting first a statement from the juror that she had tried to be fair to both sides, followed by a statement that "there is good and bad in every profession," and that she would decide for herself with respect to the police testimony. After a pause for discussion with counsel, the judge recalled the juror who, responding to a question whether her desire to go home would overcome her ability to be a fair juror, stated that it would not, adding, "I want the truth on the paper, sir."

The judge was in the best position to assess the juror's credibility. His determination that she was impartial and would perform her obligations as a juror "was based on his observations of her testimony and demeanor. Where the judge's finding is not clearly erroneous, it warrants our deference." *Commonwealth* v. *Swafford*, 441 Mass. at 337. See *Commonwealth* v. *Kincaid*, 444 Mass. at 388 (we defer to conclusions of judge regarding jurors' credibility in deciding whether jury exposed to extraneous matter). The judge's finding that the juror was impartial was permissible given her statements, and answered the Commonwealth's contention that she had responded falsely to the question put originally to the jury venire whether she would give greater or lesser weight to the testimony of police.

The judge's finding in this regard is supported also by the fact that suspicions regarding the juror's impartiality came

about, at least in part, by means of improper disclosures by the jury foreman. His recitation of the juror's supposed prejudice against police and skepticism with respect to the heroin charge, despite the efforts of the judge to steer him away from forbidden topics, injected into the dialogue information that should not have been conveyed. The judge was entitled to put the impropriety of the disclosures into perspective in arriving at his conclusion, particularly where those disclosures established that the perceived difficulties arose in large part from disagreements regarding the case. See *Commonwealth* v. *Connor*, 392 Mass. at 846 n.5 ("A more orthodox approach would be to decline to take at face value any message which does not describe difficulties which are personal to a juror, and to treat the problem as one of a deadlocked jury").

We observe also that the defendant opposed the Commonwealth's request that the juror be discharged, presumably the product of a strategic decision to attempt to retain among the jury one who might have expressed skepticism regarding the Commonwealth's case. While the judge obviously was not bound by the defendant's objection, he could permissibly consider it as a factor in deciding how to manage the situation.

Having concluded that the judge did not err in declining to discharge the problem juror, we turn to the judge's refusal to declare a mistrial. As we have indicated, the defendant argues in essence that, although he opposed removal of the problem juror at the time of the Commonwealth's request for that relief, events both prior thereto and afterward demonstrated that the juror's will was overborne by her desire to leave and therefore the verdict was effectively not unanimous. We agree that the events underlying the issue of possible discharge of the juror should be considered on the subject, but disagree that a mistrial was required.

Rule 27(d) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 897 (1979), provides that "[w]hen a verdict is returned and before the verdict is recorded, the jury may be polled in the discretion of the judge. If after the poll there is not a unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged." Here, following the jury's first report of a unanimous verdict, the clerk engaged in a routine

process of having the jury acknowledge collectively that their verdict was unanimous; the judge, noting no response from juror no. 14, questioned her directly; and the juror responded, "Not guilty." While the process at this stage did not constitute a "poll" in the strict sense, it certainly revealed doubt regarding the unanimity of the verdict and justified the judge's order that the jury deliberate further. "The only verdict which can be received and regarded, as a complete and valid verdict of a jury, upon which a judgment can be rendered, is an open and public verdict, given in and assented to, in open court, as the unanimous act of the jury, and affirmed and entered of record, in the presence and under the sanction of the court." *Commonwealth* v. *Nettis*, 418 Mass. 715, 717-718 (1994), quoting from *Lawrence* v. *Stearns*, 11 Pick. 501, 502 (1831). The judge was entitled in the circumstances to determine that the jury verdict was not unanimous at the time of affirmation; indeed, he had no other choice.

When the judge announced his intention to have the jury resume deliberations, the defendant moved for a mistrial. Pressed by the judge for a reason, defense counsel stated only that "at this point they are not going to reach a verdict." The judge observed correctly that "[y]ou don't know that," and denied the motion. The defendant claims on appeal that the judge abused his discretion in so doing because by this point it had become clear that the juror was a holdout, and that her subsequent affirmation of a guilty verdict was not genuine.

Because of the limited scope of the defendant's ground for seeking a mistrial, we could dispose of this portion of his appeal on the basis of waiver. "[A] defendant must raise a claim of error at the first available opportunity." *Commonwealth* v. *Randolph*, 438 Mass. 290, 294 (2002). Defense counsel did nothing to alert the judge to his contention that past events demonstrated that the juror in question was a holdout. Instead, he confined himself to a prediction that the jury would be unable to reach a verdict, a proposition that the judge rightly rejected on the sparse reasoning provided.

Nevertheless, given the circumstances, we prefer to address the issue on the merits. The defendant argues that there were three separate indications that the jury were deadlocked (the

two notes from the foreman and the note from juror no. 14 herself), followed by the juror's public disavowal of the guilty verdict during the affirmation process, and that consequently the judge should have accepted the fact that he had a hung jury and declared a mistrial. While the notes indicated that there was disagreement, none of them stated that the deliberations had then reached an impasse. The argument also ignores the fact that, following receipt of the notes, the judge interviewed the juror and satisfied himself that she would be impartial.[5] As we have indicated, his finding in that regard was permissible. That being the case, there was no basis on which the judge could reasonably have concluded that the juror's state of mind would inevitably bring about jury deadlock.

The judge also acted within his discretion in determining that, in ultimately agreeing to a guilty verdict, the juror's will had not been overborne by her desire to go home. The judge could reasonably rely on the juror's earlier response to his direct question on the subject that "I want the truth on the paper, sir," and his conclusion that she would not be influenced by a desire to bring her jury service to an end. Indeed, if the juror's objective was to be released from jury service, it is unlikely that she would have acted in a way (i.e., disagreeing with the first verdict) that made it likely that her jury duty would be prolonged. The judge could permissibly view her first response as a reflection of disagreement after a unanimous vote had been taken or merely a product of confusion. "Where the judge's finding is not clearly erroneous, it warrants our deference." *Commonwealth* v. *Swafford,* 441 Mass. at 337. In any event, the judge was not required to treat the jury as dead-locked at this point or, in light of the juror's expressed desire for a true verdict, consider her affirmation of the guilty verdict

---

[5]The defendant, citing *Commonwealth* v. *Connor,* 392 Mass. at 845, argues that "proper practice" would have been for the judge to speak with the juror and inform her that she could not be discharged unless she had a personal problem unrelated to the issues in the case or her relationships with other jurors. However, the judge needed to do more than simply recite the law to the juror; he needed to ascertain that she was capable of adhering to her oath to be impartial. His dealings with the juror were consistent with the requirements of *Connor.* With the advantage of hindsight, it might have been better not to interview the foreman, particularly when what was desirable was a probe of the mind of the juror herself.

as suspect. For the reasons stated, we are satisfied both that the jury were impartial and that the verdicts were unanimous.

3. *The school zone measurement.* The defendant argues that the device (a "MeasureMaster roller tape") used to measure the distance between the drug transaction and the Morgan School for the purposes of G. L. c. 94C, § 32J, was not shown to be accurate. See *Commonwealth* v. *Whynaught,* 377 Mass. 14, 18 (1979) (admission of radar evidence conditioned on demonstrating accuracy of apparatus). He relies in this regard on the testimony of Holyoke police Officer Brian Duke, who conducted the measurement, that he did not calibrate the device before undertaking the measurement, and in fact had not personally calibrated the roller tape at any time. The defendant buttresses his argument by reference to the testimony of Officer Daniel Riordan, who had determined that the device was accurate, but who testified that he could not explain its internal workings. There having been no objection to the testimony of Officer Duke, reversal of the school zone conviction comes about only if admission of the measurement evidence was error and if the error caused a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Raedy,* 68 Mass. App. Ct. 440, 446 n.8 (2007).

There was no error. Officer Riordan testified that he had checked the calibration of the roller tape near the time of Officer Duke's measurement, and the tape was accurate. He testified also that he had previously measured the distance between the site of the crime and the Morgan School and found that the distance was less than 1,000 feet. This evidence was admissible and validated Officer Duke's testimony. To the extent that cross-examination may have affected the credibility of either witness, that was for the jury in deciding what, if any, weight to give to the testimony. We observe also that Officer Duke testified that the measurement in question was 841.9 feet, a distance sufficiently less than 1,000 feet that any threshold question regarding the reliability of the measuring device would appear to be insignificant.

*Judgments affirmed.*

BROWN, J. (dissenting). I am of opinion that the judge, in rul-

ing on the defendant's motion for a mistrial, was obliged to consider the totality of the juror's actions and comments. The juror's oft repeated statement — "I want to go home" — coupled with her "Not guilty," manifest confusion, frustration, or lack of concern. When those statements are put in context with her previous indications that she was prepared to vote either guilty or not guilty — apparently whichever vote would allow her to go home more quickly — I cannot confidently conclude that the jury's deliberative process met constitutional muster. See *Commonwealth* v. *Webster*, 391 Mass. 271, 277 (1984). What happened here is no way to run a railroad. This train was off the tracks, and the judge should have allowed the motion for a mistrial. See *Commonwealth* v. *Reinstein*, 381 Mass. 555, 561 (1980).