Filed 11/26/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CHRISTIE STEINER et al., | 2d Civil No. B235347 |
| | (Super. Ct. No. 1374169) |
| Petitioners, | (Santa Barbara County) |
| | |
| v. | ORDER MODIFYING OPINION |
| | AND DENYING REHEARING |
| THE SUPERIOR COURT OF SANTA | |
| BARBARA COUNTY, | [NO CHANGE IN JUDGMENT] |
| | |
| Respondent; | |
| | |
| VOLKSWAGEN GROUP OF AMERICA et al., | |
| | |
| Real Parties in Interest. | |

THE COURT:

It is ordered that the opinion filed herein on October 30, 2013, be modified as follows:

1. On page 4, second sentence, delete "A few" and replace with Five.

2. On page 4, delete first full paragraph, and add the following paragraphs:

In response, petitioners concede that the trial court did not order Farrise to take down the entire website and that only the two pages specified in the motion were removed. They nonetheless assert the trial court's written ruling, issued the day after the court made its clarifying comments on the record, created an "ambiguity" in the scope of the order. That ruling, which was part of a lengthy final pretrial conference order, stated: "Take it down for the time of the trial. The Court will make the same order with respect

to any of the websites of the defendants upon request."  Petitioners claim the word "it" arguably referred to the entire website rather than the two pages referenced in the motion and identified by the trial court.  The record reflects, however, that the court drafted the ruling shortly after explaining it "had intended the decision here to be surgical," and was not "by any stretch of the imagination" directing removal of the entire website.  It stated: "I'm going to print [the order], one copy - 20 pages . . . .  You're going to get it out there, Monday, and I'm going to say that th[e] motion is granted.  [¶]  And Miss Farrise has a copy of it if she feels that she'd like to writ it, then it's clearly part of my record.  [¶] Now, that part's done and behind me.  I think that's being [as] surgical as I can be."

On the day the petition for review was filed, the trial court issued a separate written order denying the Steiners' request to require defense counsel to take down portions of their websites.  It explained:  "As I have said before, repeatedly, the Court is willing to surgically cut out any references in the websites of each side that could have a material effect on the outcome of this case; I do not find, in [the defense] websites any such offending material."  Two days later, Volkswagen's counsel sent an e-mail to petitioners' counsel advising that "[y]our petition to the California Supreme Court improperly reflects that Judge Anderle ordered you to take down your entire website. This clearly is contrary to Judge Anderle's order that was issued on August 22, 2011." Citing counsel's ethical obligations, Volkswagen requested that petitioners "immediately advise the Supreme Court of [the] error."  They chose not to do so.

3. At the end of the above new paragraphs, insert footnote 3 which remains the same.

[There is no change in the judgment.]

Petitioners' petition for rehearing is denied.

Filed 10/30/13 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CHRISTIE STEINER et al., | 2d Civil No. B235347 |
| Petitioners, | (Super. Ct. No. 1374169) (Santa Barbara County) |
| v. | |
| THE SUPERIOR COURT OF SANTA BARBARA COUNTY, | |
| Respondent; | |
| VOLKSWAGEN GROUP OF AMERICA et al., | |
| Real Parties in Interest. | |

An attorney's website advertised her success in two cases raising issues similar to those she was about to try here. The trial court admonished the jury not to "Google" the attorneys or to read any articles about the case or anyone involved in it. Concerned that a juror might ignore these admonitions, the court ordered the attorney to remove for duration of trial two pages from her website discussing the similar cases. We conclude this was an unlawful prior restraint on the attorney's free speech rights under the First Amendment. Whether analyzed under the strict scrutiny standard or the lesser standard for commercial speech, the order was more extensive than necessary to advance the competing public interest in assuring a fair trial. Juror admonitions and instructions, such as those given here, were the presumptively adequate means of addressing the threat of jury contamination in this case.

Although the order was improper, it is no longer in effect and thus no relief can be granted. We deny the petition for writ of mandate.[1]

## FACTS AND PROCEDURAL BACKGROUND

Richard and Christie Steiner filed this personal injury action after Richard Steiner contracted lung cancer. They alleged his cancer was caused by exposure to asbestos in friction automobile parts manufactured and distributed by Volkswagen Group of America (Volkswagen), Ford Motor Company (Ford) and others. After the jury was impaneled, Volkswagen moved for an order requiring the Steiners' attorney, Simona A. Farrise**,** to remove during trial two pages from her law firm website touting her recent successes against Ford in similar asbestos cases. The first page discussed a $1.6 million verdict against Ford and others, stating that "at least one jury managed to successfully navigate defendants' courtroom confusion and find these companies at fault." The second page described a $4,355,987 jury verdict against Ford. Volkswagen asserted that "human nature being what it is, [Volkswagen], in the interests of a fair trial, believes that plainly provocative and prejudicial information should not intentionally be prominently displayed on the internet, by the parties or their counsel in this case during trial. That will obviously prejudice the jury process during the trial and deliberations in this case, if it is encountered by a juror." Ford joined in the motion.

The Steiners argued that the request infringed upon counsel's constitutional right of free speech and that the more appropriate remedy was to admonish the jury not to search the Internet for information about the attorneys. The trial court, however, granted the motion at a hearing on August 22, 2011. After the parties expressed confusion over the scope of the order, the court clarified: "I had intended the decision here to be surgical. I was [not] directing [Ms. Farrise to] take down her whole website by any stretch of the imagination. It was the items that the Defense had pointed to that I was directing my thoughts to. [¶] Maybe I wasn't as clear as I should have been, but that's all.

---

[1] The order became moot when the trial ended. For reasons we shall explain, we exercise our discretion to reach the merits of the petition.

I wasn't asking you to do anything more than just take [down] the comments that the Defense pointed to in their motion, which was, I thought, very specific."

The trial court admonished the jurors not to Google the attorneys.  It also gave the standard admonishments prior to opening statements.  Those admonishments are not part of the record, but at the time they were given, CACI No. 100 stated:  "During the trial, do not read, listen to, or watch any news reports about this case. . . .  This prohibition extends to the use of the Internet in any way, including reading any blog about the case or about anyone involved with it or using Internet maps or mapping programs or any other program or device to search for or to view any place discussed in the testimony." [2]  (See CACI No. 100 (2011 ed.).)

The Steiners, Farrise and her law firm (collectively "petitioners") sought a writ of mandate in this court seeking to reverse the trial court's order requiring Farrise "*to take down part of her firm's website during the pendency of the trial of this case* in order to assure that the jurors do not view it."  (Italics in original.)  The petition stated the trial court initially ordered Farrise to take down the entire firm website, but subsequently "modified its order and limited application of the order to the discussion of two verdicts [Farrise] had obtained in other actions . . . ."  We summarily denied the petition.

Thereafter, petitioners sought review of our denial in the California Supreme Court.  In their petition for review, they changed the basis for their claim and represented to the Supreme Court that the trial court had ordered Farrise "*to take down her firm's entire website during the trial of this case* in order to assure that the jurors do not view it."  (Italics in original.)  The petition for review stated that "[e]ven if the order were limited to the website's discussion of other cases, it would be an unreasonable and

unnecessary prior restraint and would violate [counsel's] free speech rights.  But the order

---

[2] At oral argument, Farrise stated she believed the pretrial admonishments in this case included CACI No. 100.

is not so limited:  It requires that [counsel] take down her *entire* website, even with respect to speech wholly unrelated to any other asbestos litigation."  (Italics in original.)  This claim contradicts the claim made to this court and is unsupported by the record.  A few days later, the Supreme Court granted review and transferred the matter to this court with instructions to issue an order to show cause.  We complied.  We also asked petitioners to explain the discrepancies in the petitions regarding the scope of the trial court's order.

Petitioners conceded the trial court did not order Farrise to take down the entire website and that only the two pages specified in the motion were removed.  The petition for review improperly and erroneously stated otherwise.  The trial court resolved any supposed ambiguity in its order when, before the matter came to this court, it stated:  "I was only directing, not to have [Ms. Farrise] take down her whole website by any stretch of the imagination.  It was the items that the Defense had pointed to that I was directing my thoughts to."[3]

Farrise restored the two pages to her firm website when the trial ended in October 2011.  Volkswagen moved to discharge the order to show cause as moot.  We deferred resolution of the motion until the show cause hearing.[4]

DISCUSSION

---

[3] At oral argument, petitioners' appellate counsel, Sharon J. Arkin, stated she was solely responsible for preparing the petition for review.  It appears she is in violation of Business and Professions Code section 6068, subdivision (d), which states that it is the duty of an attorney "[t]o employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and *never to seek to mislead the judge* or any judicial officer *by an artifice or false statement of fact or law*."  (Italics added.)  (See *Mammoth Mountain Ski Area v. Graham* (2006) 135 Cal.App.4th 1367, 1375 [mischaracterization of record during oral argument on appeal].)

[4] Following Richard Steiner's death, we substituted Christie Steiner as his successor-in-interest in this matter.  Although Ford is a real party in interest, it filed a letter stating that "with [the] trial completed, Ford no longer has an interest in the subject of this writ."  It did not file a brief or join in Volkswagen's brief.

A.     *Public Interest Exception for Mootness*

Appellate courts generally will neither decide controversies that are moot nor render decisions on abstract propositions. (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541; see also *Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 78.) "A case is moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief. [Citation.]' [Citation.] 'When no effective relief can be granted, an appeal is moot and will be dismissed.' [Citations.]" (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214 (*MHC*).)

Petitioners concede the writ petition is moot, but contend this matter falls within the public interest exception to the doctrine of mootness. (See *MHC, supra,* 106 Cal.App.4th at pp. 214-215; *In re William M.* (1970) 3 Cal.3d 16, 23 ["[I]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot"].) Petitioners assert that by granting review, the Supreme Court ordered us to decide "whether a court can or should order an attorney to remove *any* website postings that do not relate to the case pending before the court." This point is debatable given that the petition for review represented that the trial court ordered removal of Farrise's *entire* law firm website during trial. An order of that magnitude would have exceeded the scope of requested relief, among other things.

The actual order is much narrower, but it does raise questions as to a trial court's authority to issue an order restricting an attorney's free speech rights during trial to prevent potential jury contamination. Because any order restricting such speech during trial is likely to become moot before a writ petition can be heard, we agree it raises an issue of broad public interest that is likely to evade timely review. (See *Nebraska Press Assn. v. Stuart* (1976) 427 U.S. 539, 546-547 (*Nebraska Press*) [prior restraint on speech via pretrial order evades review because of its inherently short duration].) We therefore deny Volkswagen's motion to discharge the order to show cause as moot and exercise our discretion to reach the petition's merits.

*B.* *Unlawful Prior Restraint on Free Speech*

Petitioners correctly assert the trial court's order placed a direct restraint on Farrise's right to freedom of speech under the United States and California Constitutions. (U.S. Const., 1st Amend.; Cal. Const., art. I, § 2, subd. (a).) "Orders which restrict or preclude a citizen from speaking in advance are known as 'prior restraints,' and are disfavored and presumptively invalid." (*Hurvitz v. Hoefflin* (2000) 84 Cal.App.4th 1232, 1241, fn. omitted (*Hurvitz*); see *Nebraska Press, supra,* 427 U.S. at p. 559 ["[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights"].) An order restricting the speech of trial participants, typically known as a "gag order," is a prior restraint. (*Hurvitz,* at pp. 1241-1242; *Saline v. Superior* Court (2002) 100 Cal.App.4th 909, 915-916.) Although the right to a fair trial is also a protected constitutional right, a court seeking to insure a fair trial may not impose a prior restraint unless "'the gravity of the "evil," discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger.'" (*Nebraska Press,* at p. 562.)

Relying upon *Gentile v. State Bar of Nevada* (1991) 501 U.S. 1030 (*Gentile*), Volkswagen contends that whenever an attorney's exercise of free speech potentially conflicts with a party's right to a fair trial, the trial court may reasonably impose a prior restraint on such speech. *Gentile* reviewed an order holding that a criminal defense attorney, who had made comments to the media concerning his client's innocence, had violated a Nevada disciplinary rule limiting an attorney's extrajudicial statements that have a "'substantial likelihood of materially prejudicing'" the trial. (*Id.* at p. 1034.) One of the issues was whether a stricter standard, such as the "'clear and present danger'" test, should apply when addressing the speech of attorneys commenting on pending criminal proceedings. (*Id.* at pp. 1070-1071.) The plurality opinion, authored by Chief Justice Rehnquist, concluded the lesser standard in the Nevada rule passed constitutional muster. (*Id.* at p. 1075.) It explained that "[l]awyers representing clients in pending cases are key participants in the criminal justice system, and the State may

demand some adherence to the precepts of that system in regulating their speech as well as their conduct."  (*Id.* at p. 1074.)

The matter before us does not involve the constitutionality of a state disciplinary rule regulating speech by attorneys in criminal proceedings.  It involves the constitutionality of a single court order prohibiting an attorney in a civil proceeding from publishing speech about two other civil cases.  *Gentile* did not discuss a trial court's authority to issue an order restricting an attorney's speech during a civil proceeding.  (See *In re Morrissey* (E.D. Va. 1998) 996 F.Supp. 530, 539.)  Given these distinctions, *Gentile* does not assist our review.

1.      *Standard of Judicial Scrutiny*

As a general rule, gag orders on trial participants are subject to strict judicial scrutiny and may not be imposed "unless (1) the speech sought to be restrained poses a clear and present danger or serious and imminent threat to a protected competing interest; (2) the order is narrowly tailored to protect that interest; and (3) no less restrictive alternatives are available."  (*Hurvitz, supra,* 84 Cal.App.4th at p. 1241, fn. omitted; *Maggi v. Superior Court* (2004) 119 Cal.App.4th 1218, 1225 (*Maggi*).)   The trial court did not apply this or any other standard because Volkswagen's motion did not address First Amendment concerns.

With the benefit of hindsight, Volkswagen contends the order is not subject to strict scrutiny, but rather to the less restrictive standard for commercial speech.  Typically, "[l]awyer advertising is commercial speech and is accorded an intermediate measure of First Amendment protection."  (*Revo v. Disciplinary Bd. of the Supreme Court* (10th Cir. 1997)106 F.3d 929, 932; *Florida Bar v. Went For It, Inc.* (1995) 515 U.S. 618, 623 (*Florida Bar*).)  Petitioners acknowledge Farrise's website advertises her legal services and thus contains elements of commercial speech.

*Central Hudson Gas v. Public Service Comm'n* (1980) 447 U.S. 557, (*Central Hudson*), considered the constitutionality of a New York regulation banning promotional advertising by an electrical utility.  Recognizing that commercial speech is accorded less protection, the court developed a four-prong intermediate scrutiny standard

to examine whether state regulations on commercial speech are constitutionally valid: First, the court must determine whether the speech concerns lawful activity and is not misleading. If it satisfies that criteria, the court must decide whether the asserted governmental interest is substantial, whether the restraint directly advances that interest and whether it is "more extensive than is necessary to serve that interest." (*Id.* at p. 566; *Larson v. City and County of San Francisco* (2011) 192 Cal.App.4th 1263, 1285 & fn. 7 (*Larson*); *People* ex rel. *Brown v. PuriTe*c (2007) 153 Cal.App.4th 1524, 1537 (*PuriTec*).) The court struck down the utility advertising ban under the fourth prong, concluding the public agency had failed to "show[] that more limited speech regulation would be ineffective." (*Central Hudson,* at p. 571.)

Because *Central Hudson* addressed "whether a particular commercial speech regulation is constitutionally permissible" (*Thompson v. Western States Medical Center* (2002) 535 U.S. 357, 376), the cases applying it similarly involve the review of statutory or administrative regulations.[5] Volkswagen cites no cases applying *Central Hudson* to judicial restraints on commercial speech. In fact, it cites no cases involving such restraints. Without conceding the issue, petitioners contend it is irrelevant which standard we apply because the trial court's order does not pass muster under even the less restrictive *Central Hudson* test. We agree, and consequently focus our discussion on that standard. In so doing, we do not decide whether *Central Hudson* extends to judicial restraints on commercial speech. We decide only that since the trial court's order "cannot satisfy this intermediate-scrutiny test, it necessarily fails under a strict scrutiny analysis." (*Baba v. Board of Supervisors* (2004) 124 Cal.App.4th 504, 518.)

2.      *Application of Central Hudson*

---

[5] See, e.g., *Edenfield v. Fane* (1993) 507 U.S. 761, 764 [agency rule banning accountants from engaging in certain solicitation of clients]; *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico* (1986) 478 U.S. 328, 340-341 [statute restricting casino advertising]; *Valle Del Sol Inc. v. Whiting* (9th Cir. 2013) 709 F.3d 808, 818-820 [statute governing solicitation of day laborers]; *World Wide Rush, LLC v. City of Los Angeles* (9th Cir. 2010) 606 F.3d 676, 684-685 [ordinance banning freeway signs]; *PuriTec, supra,* 153 Cal.App.4th at pp. 1537-1538 [statutes governing "health claims" by sellers of water treatment devices].

"The party seeking to uphold a restriction on commercial speech carries the burden of justifying it." (*Bolger v. Youngs Drug Products Corp.* (1983) 463 U.S. 60, 70-71, fn. 20.) Volkswagen asserts the restraint was proper under the first prong of the *Central Hudson* test because the challenged speech was misleading. (*Central Hudson*, *supra,* 447 U.S. at p. 566; *Bates v. State Bar of Arizona* (1977) 433 U.S. 350, 383 ["[a]dvertising that is false, deceptive, or misleading of course is subject to restraint"].) It claims the two web pages omitted pertinent information, such as that a settlement in one case resulted in the dismissal of all claims against Ford, and that another defendant secured a defense verdict. Volkswagen ignores, however, that it did not seek removal of the pages to prevent deceptive or misleading advertising. It sought removal to deny the jury access to the pages until the trial was over. Volkswagen presented no evidence or argument demonstrating the pages were subject to restraint as misleading advertising, and the trial court made no such finding. Thus, we have no basis to make that determination here.

Turning to the second prong, the parties agree that a substantial governmental interest exists in assuring the parties receive a fair trial. (See *Maggi, supra,* 119 Cal.App.4th at p. 1225.) Their dispute centers on the third and fourth prongs. (*Central Hudson, supra*, 447 U.S. at p. 566; *Keimer v. Buena Vista Books, Inc.* (1999) 75 Cal.App.4th 1220, 1231.) Even if we assume the restraint directly advanced the stated governmental interest, it fails to withstand the fourth prong as it was more extensive than necessary to serve that interest. (*Larson, supra,* 192 Cal.App.4th at pp. 1292-1293.) That prong requires "'. . . ' . . . ' . . . a "fit" between the [government's] ends and the means chosen to accomplish those ends," a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is "in proportion to the interest served," that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective.'" (*Florida Bar, supra,* 515 U.S. at p. 632; *Gerawan Farming, Inc. v. Kawamura* (2004) 33 Cal.4th 1, 23-24 (*Gerawan*).) No such fit is to be found here.

Volkswagen maintains the restraint was necessary to reduce the chance of "an expensive and time-consuming new trial" if a juror inappropriately accessed Farrise's firm website during trial. Volkswagen has not demonstrated, however, that "alternative, less-speech-restrictive [measures] would be less efficient or effective in accomplishing the government's objective." (*Gerawan, supra,* 33 Cal.4th at pp. 23-24; see *Thompson v. Western States Medical Center, supra,* 535 U.S. at p. 358 ["If the Government can achieve its interests in a manner that does not restrict commercial speech, or that restricts less speech, the Government must do so"].) As emphasized in *Thompson*, "[i]f the First Amendment means anything, it means that regulating speech must be a last -- not first -- resort." (*Thompson,* at p. 373.)

It is well established that "frequent and specific cautionary admonitions and jury instructions . . . constitute the accepted, presumptively adequate, and plainly less restrictive means of dealing with the threat of jury contamination." (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1221 (*NBC Subsidiary*).) In *NBC Subsidiary*, our high court "stressed [its] adherence to the fundamental premise that, as a general matter, cautionary admonitions and instructions serve to correct and cure myriad improprieties, including the receipt by jurors of information that was kept from them. To paraphrase Justice Holmes, it must be assumed that a jury does its duty, abides by cautionary instructions, and finds facts only because those facts are proved." (*Id.* at pp. 1223-1224, citing *Aikens v. Wisconsin* (1904) 195 U.S. 194, 206.)

Although it applied strict scrutiny, *Freedom Communications, Inc. v. Superior Court* (2008) 167 Cal.App.4th 150 (*Freedom Communications*) is instructive. To prevent witnesses from being influenced by the trial testimony of others, the trial court issued a gag order prohibiting the defendant newspaper from reporting on the witnesses' testimony. (*Id.* at pp. 152-153.) The Court of Appeal granted the newspaper's petition for writ of mandate, observing the "case law makes clear that the danger the trial court sought to avert by its prior restraint here -- the risk that witnesses in a civil trial might be influenced by reading news reports of the testimony of other witnesses -- cannot possibly justify the censorship imposed." (*Id.* at p. 153.)

The court emphasized that less restrictive alternatives were available to protect the plaintiffs' fair trial rights, including admonishing witnesses not to read press accounts of the trial.  (*Freedom Communications*, *supra,* 167 Cal.App.4th at p. 154.)  It remarked that "such an admonishment would go farther in preventing the tainting of witness testimony because the gag order applies only to [the defendant newspaper] and not to other newspapers that cover the trial."  (*Ibid.*)  The same is true here.  Although the trial court's order required Farrise to remove information from her website regarding prior verdicts involving Ford, it did not apply to any other websites discussing such verdicts.  Thus, the trial court's admonitions not to research the parties or their attorneys did more to prevent potential jury misconduct than the removal of some of the available information on the Internet.  (See *ibid.*)

Volkswagen cites no authority suggesting that a prior restraint of speech, whether commercial or otherwise, is the appropriate means of handling the threat of jury contamination.  It maintains that while juror admonishments may have been sufficient to prevent juror misconduct in the past, they are no longer effective in today's world of 24-hour news, Google, Twitter and the Internet.  It emphasizes that "jurors' ready access to information . . . has vastly increased the risk of prejudice from extrajudicial sources and has seriously weakened courts' ability to filter or control the flow of information."  (See, e.g., *Russo v. Takata Corp.* (S.D. 2009) 774 N.W.2d 441, 452, 454 [juror's brief discussion with fellow jurors about his "Google search" results indicating "there were no other lawsuits against" the defendant seatbelt manufacturer was prejudicial and warranted vacation of defense verdict]; Amey, *Social Media and the Legal System: Analyzing Various Responses to Using Technology from the Jury Box* (2010) 35 J. Legal. Prof. 111, 130 ["'It is unlikely that judges or lawyers will be able to eliminate juror misuse of the Internet, and they should adjust to a world in which control of information to or from jurors is much less effective than it was before the advent of Google, Facebook and the next emerging technology'"]; Artigliere, *Sequestration for the Twenty-First Century: Disconnecting Jurors from the Internet During Trial* (2011) 59 Drake L.Rev. 621

["Judges and trial lawyers around the country are shocked by court systems' apparent inability to control the behavior of jurors"].)

Trial courts have grappled with this issue for several years. The parties cite dozens of law review and legal news articles addressing such topics as the "wired juror," "mistrial by twitter" and how to silence the "twittering juror."[6] These articles discuss various ways courts are coping, including imposing courthouse technology bans, threats of contempt, extensive voir dire, stronger admonitions and pattern cautionary jury instructions reflecting the realities of the electronic age. (See, e.g., St. Eve & Zuckerman, *Ensuring an Impartial Jury in the Age of Social Media, supra,* 11 Duke L. & Tech. Rev. at pp. 18-20.) While recognizing the imperfections in these solutions, the authors stop short of suggesting that prior restraints of out-of-courtroom speech are the answer. The focus is on controlling jurors' behavior, not that of the trial participants.

The first line of defense against juror legal research is "to address the issue in jury instructions." (Morrison, *Can the Jury Trial Survive Google?* (winter 2011) 25 Crim. Just. 4, 14.) As one state court observed, "given the simplicity, speed, and scope of Internet searches, allowing a juror to access with ease extraneous information about the law and the facts, trial judges are well advised to reference Internet searches specifically when they instruct jurors not to conduct their own research or investigations." (*Commonwealth v. Rodriguez* (2005) 63 Mass.Ct.App. 660 [828 N.E.2d 556, 568, fn. 11]; see Lee, *Silencing the 'Twittering Juror': The Need to Modernize Pattern Cautionary Jury Instructions to Reflect the Realities of the Electronic Age* (fall 2010) 60 DePaul

---

[6] E.g., Bell, *Juror Misconduct and the Internet* (fall 2010) 38 Am. J. Crim. L. 81; Browning, *When All that Twitters is Not Told: Dangers of the Online Juror* (March 2010) 73 Tex. B.J. 216; Goldstein, *The Appearance of Impropriety and Jurors on Social Networking Sites: Rebooting the Way Courts Deal with Juror Misconduct* (summer 2011) 24 Geo. J. Legal Ethics 589; Hoffmeister, *Google, Gadgets, and Guilt: Juror Misconduct in the Digital Age* (winter 2012) 83 Colo. L.Rev. 409; Janoski-Haehlen, *The Courts are All a 'Twitter': The Implications of Social Media Use in the Courts* (fall 2011) 46 Val. U.L.Rev. 43; Lau, *Towards Zero Net Presence* (2011) 25 Notre Dame J.L. Ethics & Pub. Policy 237; St. Eve & Zuckerman, *Ensuring an Impartial Jury in the Age of Social Media* (March 2012) 11 Duke L. & Tech. Rev. 1; Robinson, *Yes, Jurors Have a Right to Freedom of Speech Too! . . . Well, Maybe. Juror Misconduct and Social Networks* (spring 2013) 11 First Amend. L.Rev. 593.

L.Rev. 181, 186 ["The traditional prohibition against external communication and outside research must be rewritten to meet the demands of the twenty-first century"].)

Consistent with this view, our Legislature enacted Statutes 2011, chapter 181, clarifying that jurors may not use social media and the Internet -- such as texting, Twitter, Facebook and Internet searches -- to research or disseminate information about cases, and can be held in criminal or civil contempt for violating these restrictions.[7] The bill analysis highlighted that "[t]he use of [electronic and wireless] devices by jurors presents an ongoing challenge in preventing mistrials, overturned convictions and chaotic delays in court proceedings.  In response, this common sense measure seeks to clarify and codify an informal practice among trial courts to authorize courts to appropriately admonish jurors against the use of electronic and wireless devices to communicate, research, or disseminate information about an ongoing case."  (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 141 (2010-2011 Reg. Sess.) Mar. 15, 2011, p. 1; see Chow, *Chapter 181: The End to Juror Electronic Communications* (2012) 43 McGeorge L.Rev. 581, 584-586.)

Among other things, the law amended Code of Civil Procedure section 611 to require the trial court to admonish the jury "that the prohibition on research, dissemination of information, and conversation applies to all forms of electronic and wireless communication."  It also amended Penal Code section 166, subdivision (a)(6) to provide that a juror may be guilty of a misdemeanor for "[w]illful disobedience . . . of a court admonishment related to the prohibition on any form of communication or research about the case, including all forms of electronic or wireless communication or research."

The adoption of these amendments underscores that trial courts are appropriately focusing on tougher admonition rules and contempt consequences, rather than on trying to restrain speech on the Internet.  This is particularly true where, as here, the speech does not directly concern the case before the court.  It also is consistent with the tenet that admonitions are the presumptively reasonable alternative to restricting free

---

[7] Although this law was adopted shortly before the trial started in this case, it did not go into effect until the following year, on January 1, 2012.

speech rights.  (*NBC Subsidiary, supra*, 20 Cal.4th at p. 1221; *Freedom Communications, supra,* 167 Cal.App.4th at p. 154.)

The trial court properly admonished the jurors not to Google the attorneys and also instructed them not to conduct independent research.   We accept that jurors will obey such admonitions.  (*NBC Subsidiary, supra,* 20 Cal.4th at pp. 1223-1224.)  It is a belief necessary to maintain some balance with the greater mandate that speech shall be free and unfettered.  If a juror ignored these admonitions, the court had tools at its disposal to address the issue.  It did not, however, have authority to impose, as a prophylactic measure, an order requiring Farrise to remove pages from her law firm website to ensure they would be inaccessible to a disobedient juror.  Notwithstanding the good faith efforts of a concerned jurist, the order went too far.

DISPOSITION

The trial court's order constituted an unlawful prior restraint on Farrise's constitutional right to free speech.  Because the order is no longer in effect, the trial court need not take any action.  Having served its purpose, the order to show cause is discharged and the petition for writ of mandate is denied.  The parties shall bear their own costs.

<u>CERTIFIED FOR PUBLICATION.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

Thomas Anderle, Judge

Superior Court County of Santa Barbara

_____

Farrise Firm, P.C., Simona A. Farrise, Carla V. Minnard; The Arkin Law Firm, Sharon J. Arkin for Petitioners.

No appearance for Respondent.

Herzfeld & Rubin, Craig L. Winterman, Tara-Jane Flynn; Carroll, Burdick & McDonough LLP, Laurie J. Hepler, Nathaniel K. Fisher for Real Party in Interest Volkswagen Group of America, Inc.

Yukevich Cavanaugh, Steven Douglas Smelser, Dykema Gossett LLP, John M. Thomas for Real Party in Interest Ford Motor Co.

McKenna Long & Aldrige, Kelvin Timothy Wyles for Real Party in Interest Pneumo Abex.