Filed 10/27/22  Godspeak Calvary Chapel v. County of Ventura CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| GODSPEAK CALVARY CHAPEL, et al.,<br><br>    Cross-Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF VENTURA, et al.,<br><br>    Cross-Defendants and Respondents. | 2d Civ. No. B315027<br>(Super. Ct. No. 56-2020-00544086-CU-MC-VTA)<br>(Ventura County) |

INTRODUCTION

Respondents County of Ventura and County Health Officer Robert Levin, M.D. (County) sought to enjoin appellants Godspeak Calvary Chapel and pastor Rob McCoy (Godspeak) from holding indoor worship services in violation of state and local health orders during the COVID-19 crisis.  Godspeak cross-complained against the County, as well as respondents Governor

Gavin Newsom and Acting Public Health Officer Tomas Aragon, M.D. (State), alleging the indoor worship restrictions violated its members' First Amendment rights.

The County dismissed its enforcement action in April 2021 after the challenged restrictions were rescinded. Godspeak's cross-claims remained at issue. The County and State demurred to Godspeak's cross-claims for declaratory and injunctive relief as moot and claimed immunity from liability for damages. The trial court sustained the demurrers without leave to amend and dismissed the case. Godspeak appeals.

We affirm. Godspeak's claims for declaratory and injunctive relief are moot. The constitutional violations giving rise to those claims are not likely to recur. The State and County are immune from liability on any remaining claims for nominal and compensatory damages.

FACTUAL AND PROCEDURAL BACKGROUND

Governor Gavin Newsom declared a state of emergency in California on March 4, 2020 in response to a sharp rise in COVID-19 infections. A stay-at-home order closed most public spaces on March 19 and directed residents to heed health directives issued by the State Public Health Officer. A four-stage reopening began on May 4, 2020, starting with those sectors identified as "lower risk" by the California Department of Public Health (CDPH).[1] CDPH started publishing a monitoring list

---

[1] CDPH later replaced the four-stage reopening framework with the "Blueprint for a Safer Economy." The Blueprint created a tiered system in which the CDPH assigned each county a color based on specified COVID-19 risk-assessment factors. (Governor's Exec. Order No. N-60-20 (May 4, 2020).)

2

displaying the counties with the highest rates of disease transmission and hospitalization.

Infection rates continued to rise statewide in July 2020. The State Public Health Officer ordered those counties appearing on the monitoring list to close indoor operations in seven categories of businesses and activities considered high-risk, including "places of worship," on July 13, 2020.[2]  (State order.) Ventura County was among 32 counties listed at the time.  The County issued a local order the next day enforcing the closures (County order.)

Godspeak held indoor worship services at its Newbury Park church despite the restrictions.  The County asked Pastor McCoy over the phone to comply with the orders and suggested he hold services online or outdoors while the orders remained in effect.  It reiterated this position in a July 31 enforcement letter.  The County sued for injunctive relief when the indoor services continued.  The trial court issued a temporary restraining order in August 2020 and a preliminary injunction in October 2020.  These prohibited Godspeak from "[c]onducting, participating in, or attending worship services . . . in any manner which violates any applicable state or local health orders" pending trial.  Godspeak cross-complained against the County and the State for violating its members' First Amendment rights.

The County dismissed the enforcement action in April 2021 after state and local health officials rescinded the worship

---

[2] The seven categories included:  (1) gyms and fitness centers; (2) places of worship; (3) protests; (4) offices for non-critical infrastructure sectors; (5) personal care services (nail salons, massage parlors, and tattoo parlors); (6) hair salons and barbershops; and (7) malls.

restrictions.  Only Godspeak's cross-claims remained.  The church's second amended cross-complaint sought declaratory relief, injunctive relief, and compensatory damages for past violations of its constitutional rights.  The County and State demurred to the claims as moot.  They also argued they were immune under both federal and state law to any claim for damages.[3]

The trial court sustained both demurrers without leave to amend and dismissed the case.  Godspeak appealed.

DISCUSSION

*A. Appealability*

The trial court issued a minute order sustaining the demurrers without leave on August 6, 2021 but did not enter final judgment until after the parties briefed this appeal.[4]  The parties attribute the delay to confusion caused by ambiguous language in the State's notice of ruling on the demurrers.  We

---

[3] The State and County argued on demurrer that Godspeak did not file a claim under the Government Tort Claims Act (GCTA) prior to filing its cross-complaint.  (Gov. Code, §§ 905, 945.4.)  The trial court did not address the argument in its minute order sustaining the demurrers and the parties did not raise GCTA compliance in briefing here.  We treat the issue as waived.  (See *People v. Stanley* (1995) 10 Cal.4th 764, 793, quoting 9 Witkin, Cal. Procedure, (3d ed. 1985) Appeal, § 479, p. 469 ["'[E]very brief should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration'"].)

[4] The trial court entered the order and judgment dismissing the second amended cross-complaint on July 21, 2022.

4

grant Godspeak's unopposed request for judicial notice of the late-filed judgment[5] and hear the merits of the appeal. (See *Nguyen v. Ford* (2020) 49 Cal.App.5th 1, 10, fn. 4 ["In the absence of any objection by [respondent], who has fully briefed the merits of this appeal, we exercise our authority to treat Nguyen's notice of appeal as timely filed"].)

### B. Mootness

Godspeak concedes the health orders restricting indoor worship services are no longer in effect. Any claims for injunctive and declaratory relief are therefore moot. Appellate courts generally refrain from "render[ing] opinions on moot questions or abstract propositions, or declare principles of law which cannot affect the matter at issue on appeal." (*Daily Journal Corp. v. County of Los Angeles* (2009) 172 Cal.App.4th 1550, 1557.) "This rule has regularly been applied when injunctive relief is sought but, pending appeal, the act sought to be enjoined has been performed." (*Ibid.*) Godspeak requests we exercise our discretion to decide the appeal because it involves a matter of broad public interest that is likely to recur. (*Steiner v. Superior Court* (2013) 220 Cal.App.4th 1479, 1485-1486; *Malatka v. Helm* (2010) 188 Cal.App.4th 1074, 1088.)

We acknowledge this appeal involves a matter of public interest. The restrictions Godspeak challenges were a matter of concern to many people of faith throughout the state. Several churches sued to enjoin local health officials from enforcing orders that prohibited indoor worship services but allowed

---

[5] We refer to "Appellants' Motion for Judicial Notice, or in the Alternate, to Augment Record on Appeal" filed September 14, 2022. We also grant Godspeak's motion of the same title filed on July 11, 2022. The State and County do not oppose the motions.

similar secular activities to reopen.  These challenges reached our nation's highest court, which found the restrictions violated the Free Exercise Clause by treating "comparable secular activity more favorably than religious exercise."  (*Tandon v. Newsom* (2021) 593 U.S. __, __ [141 S.Ct. 1294, 1296, 209 L.Ed.2d 355], citing *Roman Catholic Diocese of Brooklyn v. Cuomo* (2020) 592 U.S. ___, ___, [141 S.Ct. 63, 67, 208 L.Ed.2d 206] (per curiam).)[6] In two of these cases the State stipulated to judgments permanently enjoining further enforcement of such restrictions.[7] Our colleagues in the Sixth District recently pronounced them facially unconstitutional in *People v. Calvary Chapel San Jose* (2022) 82 Cal.App.5th 235, 255-256.

We need not add our voice to the chorus.  Godspeak's belief that religious liberties remain "under constant threat" assumes officials will reflexively adopt the obsolete measures of 2020 during future outbreaks.  Two stipulated judgments prohibit the

---

[6] The United States Supreme Court enjoined enforcement of California's indoor worship restrictions in three other cases as well:  *Harvest Rock Church, Inc. v. Newsom* (2020) 592 U.S. ___ [141 S.Ct. 889, 208 L. Ed.2d 448] (*Harvest Rock*); *South Bay United Pentecostal Church v. Newsom* (2021) 592 U.S. ___ [141 S.Ct. 716, 209 L.Ed.2d 22] (*South Bay*); *Gateway City Church v. Newsom* (2021) 592 U.S. ___ [141 S.Ct. 1460, 209 L.Ed.2d 178].

[7] The State stipulated to permanent injunctions in *Harvest Rock* and *South Bay* on May 14, 2021, and June 1, 2021, respectively, when those cases were remanded to the District Court.  (*Harvest Rock Church v. Newsom* (C.D. Cal. 2020, No. 2:20-cv-0614 JGB (KK); *South Bay United Pentecostal Church v. Newsom* (C.D. Cal. 2020, No. 3:20-cv-865-BAS-AHG).)  The State stipulated to the third judgment on June 14, 2021, in *Burfitt v. Newsom* (Super. Ct. Kern County, 2020, No. BCV-20-102267).

State from singling out houses of worship when imposing restrictions on indoor gatherings in the future.  Pandemic-era court decisions define the boundaries of public health officials' emergency powers more clearly than before, particularly with respect to policies hindering the exercise of religious liberties. Courts will evaluate future legal challenges to state authority in this post-pandemic context.  (See *Building a Better Redondo, Inc. v. City of Redondo Beach* (2012), 203 Cal.App.4th 852, 867 [resolving moot questions on appeal not justified when a case "presents fact-specific issues that are unlikely to recur"].)

### C. Damages

Godspeak contends its claims for monetary damages against the County are live controversies.[8]  (See *Bernhardt v. County of Los Angeles* (9th Cir. 2002) 279 F.3d 862, 872.)  The County insists it is immune from damages under the Eleventh Amendment because it acted as the "arms" of the State while enforcing the health orders at issue.[9]  (See *Pitts v. County of Kern* (1998) 17 Cal.4th 340, 348, quoting *Howlett v. Rose* (1990) 496 U.S. 358, 365 [110 L.Ed.2d 332] ["'[T]he State and arms of the State . . . are not subject to suit under § 1983 in either federal court or state court'"].)  Godspeak argues the County cannot claim immunity because it acted independently from the State

---

[8] Godspeak does not appeal the dismissal of its damages claims against the State.

[9] The Eleventh Amendment to the United States Constitution states:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

when it adopted and enforced its own worship restrictions. (*Monell v. New York City Dept. of Social Servs.* (1978) 436 U.S. 658, 690 [56 L.Ed.2d 611].)  We look to state law to determine whether the County acted on behalf of the State under these circumstances.  (*Pitts*, at p. 352, citing *McMillian v. Monroe County* (1997) 520 U.S. 781, 786 [138 L.Ed.2d 1] (*McMillian*).)  "While this law may give varying responses, we look to "the weight of the evidence" to reach a conclusion." (*Pitts*, at p. 356, citing *McMillian*, at p. 793.)

The Health and Safety Code contains the statutory framework for California's public health system.  State health officials assume a greater degree of control over their local counterparts during health crises.  (See Health & Saf. Code, § 131080 [directing CDPH to "control and regulate" the actions of local health authorities "when in its judgment the public health is menaced . . ."].)  The health officer of each county must "enforce all orders, rules, and regulations concerning quarantine or isolation prescribed or directed by the department" during outbreaks of communicable diseases.  (*Id.*, § 120195.)  The dispositive question here, it follows, is whether Godspeak's claims arise from acts performed by the County while enforcing State's "orders, rules, and regulations" pursuant to this statutory directive.  We conclude they do.

The State order directed those counties appearing on the monitoring list to close "places of worship" and six other high-risk indoor activities immediately.  The County order enforced this mandate.  It began with the proviso that it was issued "AS DIRECTED BY [CDPH] AND UNDER THE AUTHORITY OF CALIFORNIA HEALTH AND SAFETY CODE SECTIONS 101030, 101040, 101085, AND 120175, TITLE 17 CALIFORNIA

8

CODE OF REGULATIONS SECTION 2501, ARTICLE XI OF THE CALIFORNIA CONSTITUTION, AND CALFORNIA GOVERNMENT CODE SECTION 8610, 8630, 8634, AND 8665 . . . ." It closed the same seven indoor activities described in the State order. The County's July 31 letter to Godspeak did not refer to the local order at all; instead, it requested the church comply with "the most recent State Health Officer order" and attached the State order for reference. It cautioned "that only outdoor services, with the appropriate social distancing and use of face coverings, *are allowed by the State* at this time." (Italics added.) Finally, the County's complaint for injunctive relief cited only those provisions of the County order implementing the State's heightened restrictions for communities on the monitoring list.

We do not imply the County acted as the State's adjutant for all purposes during this crisis. (See, e.g., *McMillian, supra,* 520 U.S. at p. 785 ["we are not seeking to make a characterization of [local officials] that will hold true for every type of official action they engage in"].) The County retained authority to "take any preventive measure . . . necessary to protect and preserve the public health" (Health & Saf. Code, § 101040, subd. (a)), including measures "more restrictive than . . . the public health measures imposed on a statewide basis. . . ." (Governor's Exec. Order No. N-60-20 (May 4, 2020)). The activities at issue here, however, were performed by the County pursuant to its statutory obligation to "enforce all orders, rules, and regulations concerning quarantine or isolation" issued by the

9

State.  It is therefore immune from claims for damages arising from these activities under the Eleventh Amendment.[10]

DISPOSITION

The judgment of dismissal is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


BALTODANO, J.

---

[10] A county is immune from liability under section 1983 if the local health officer is found to have "acted in his capacity as a state official rather than a . . . policymaker for the county." (*County of L.A. v. Superior Court*, (1998) 68 Cal.App.4th 1166, 1171, citing *McMillian, supra,* 520 U.S. at pp. 784-785.)

Henry J. Walsh, Judge
Superior Court County of Ventura

_____

Tyler & Bursch, Robert H. Tyler and Nada N. Higuera, for Cross-Plaintiffs and Appellants Godspeak Calvary Chapel and Rob McCoy.

Tiffany N. North, County Counsel, Emily T. Gardner, Principal Assistant County Counsel, and Jaclyn S. Smith, Assistant County Counsel, for Cross-Defendants and Respondents County of Ventura and Robert Levin, M.D.

Rob Bonta, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Paul Stein, Supervising Deputy Attorney General, Lisa J. Plank and Todd Grabarsky, Deputy Attorneys General, for Cross-Defendants and Respondents Gavin Newsom and Erica Pan, M.D.