Filed 12/4/25  Marquez v. Castaneda CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

BRANDON MARQUEZ,

  Appellant,

v.

EUGENIA CASTANEDA,

  Respondent.

E083979

(Super.Ct.No. IND1701459)

OPINION

APPEAL from the Superior Court of Riverside County.  Mickie Elaine Reed, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Brandon Marquez, in pro. per., for Appellant.

No appearance for Respondent.

1

INTRODUCTION

Brandon Marquez appeals from a one-year restraining order issued against him under the Domestic Violence Prevention Act (Fam. Code,[1] § 6200 et seq. (DVPA)). We affirm.

FACTUAL BACKGROUND[2]

Marquez and respondent Eugenia Castaneda (Castaneda) have been engaged in a custody dispute since September 2017, when their one child, L., was two months old. On January 17, 2024, Castaneda filed a request for a domestic violence restraining order (DVRO) against Marquez, and the trial court granted a temporary DVRO that same day. Several days later, on January 22, 2024, Marquez filed a request for a DVRO against Castaneda. The trial court did not enter a temporary DVRO against Castaneda. Neither DVRO request, nor any responses to the requests, are included in the appellate record.

On February 8, 2024, the trial court (Judge Gregory J. Olson) held an evidentiary hearing on both DVRO requests. Castaneda was represented by counsel and Marquez appeared in pro. per. Castaneda called Marquez as her sole witness. Her counsel asked him a series of questions about an incident that occurred at the apartment complex where they both lived in separate apartments. Marquez admitted that on December 27, 2023, he deposited Castaneda's flat screen television on her back patio along with several condoms that he had filled with lotion to appear "used." In the photograph of her patio

---

[1] Unlabeled statutory citations refer to the Family Code.

[2] Marquez failed to provide a factual summary as required by rule 8.204(a)(2)(C) of the California Rules of Court.

that Castaneda submitted into evidence, the television looked like it had been smashed. Marquez denied that he had intentionally vandalized the television, explaining that it had broken when he "dropped" it onto Castaneda's patio. The photograph is not in the appellate record. Marquez also admitted that the next day (December 28, 2023) he sent Castaneda a text calling her a "slut" and another text that said, " 'Fuck you. You're the worst person in the world. If you go on a date with another man, I will know, and I will hurt him.' " Castaneda also submitted into evidence a photo of Marquez making "an obscene gesture" at her security camera on January 24, 2024, while the temporary DVRO was in place. That photograph is also not in the appellate record.

Marquez testified as the sole witness in support of his DVRO request. During his testimony, the trial court repeatedly directed Marquez to stay on topic and asked him to describe the abuse that Castaneda had subjected him to. In response, Marquez would either say that Castaneda was exaggerating her claims against him or describe arguments the two of them had regarding custody and visitation. When the court told Marquez that the conduct he was describing did not qualify as abuse, Marquez responded, "I know, but the stress and the stress of the allegations." He said, "every time we talk at our exchanges, even if it's just like—I can't even begin to—like, my kid's in tears all the time because he doesn't want to deal with it. I can't even talk to her about that without her getting mad. So, it just turns into me politely talking to her, Your Honor, and her cussing at me, screaming at me, yelling at me. It's just ridiculous." When the court explained that not wanting to discuss custody and visitation was not grounds for a DVRO, Marquez replied, "And there's other reasons, too. She got mad because I wanted

3

to cut her off, and she wanted to continue doing the exchanges. And I said, 'no.' You give me too much stress. There's too much infidelity. There's too much—this is contributed—all the stress has contributed to my health issues. I had to remove my colon. I had two autoimmune diseases. I had to go see a therapist now, physical therapy. All this stuff. She's mentally and verbally abused me. I don't trust her."

In closing argument, Castaneda's counsel argued that the patio incident and the text messages were intended to, and did, disturb Castaneda's peace and thus constituted abuse under the DVPA. Marquez's closing argument focused on his affection for L. and on describing the fights that he and Castaneda were having over co-parenting. The trial court again reminded Marquez that he was talking about custody and visitation and not domestic violence.

After hearing the parties' evidence and argument, the trial court granted Castaneda's request and denied Marquez's. The court observed that, although the root of the problem between the parties involved custody and visitation issues, not domestic violence, it nevertheless found that Marquez's conduct toward Castaneda "went over the line" and constituted abuse under the DVPA. After the court announced its ruling, Marquez asked if there was any way he could "expunge [the DVRO] later" because he felt it was "unfair." The court reiterated that it was granting Castaneda's DVRO request because his conduct was "despicable" and "went over the line," and he responded, "I admit to it, Your Honor."

The court ordered Marquez to stay at least 100 yards away from Castaneda and her two sons—L. and L.'s older half sibling—for one year, until February 7, 2025. As a

4

result of the restraining order, the court prohibited Marquez from owning, possessing, or having access to any firearms or ammunition while the DVRO was in effect. The court granted sole legal and physical custody of L. to Castaneda and ordered unsupervised visitation to Marquez. On the DVRO form, the court checked the boxes in item 13(b) for two exceptions to the no-contact order—(1) the one allowing brief and peaceful contact with Castaneda to communicate about L. for court-ordered visits and (2) the one allowing contact with L. during court ordered visits. However, the court did not check the boxes in item 14(b) for the two corresponding exceptions to the stay-away order. The court set a hearing for February 28, 2024 to review the status of custody and visitation.

At the February 28 hearing, both Castaneda and Marquez were represented by counsel. Marquez's counsel informed the trial court (Commissioner Mickie Reed) of the discrepancy in the DVRO form regarding the stay-away exceptions in item 14b for peaceful contact with Castaneda and L. for court-ordered visitation. The court concluded that the failure to check the boxes for those two exceptions was inadvertent error, and the court amended the DVRO to check both boxes. The court commended Marquez for enrolling in the court-ordered 52-week anger management program but denied his request for joint legal and physical custody, explaining that he "has not yet reached a place where he could rebut" the presumption in section 3044 that awarding him joint physical or legal custody would be detrimental to L.'s best interests. Marquez filed a timely notice of appeal.

5

The purpose of the DVPA is "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) A court may issue a restraining order under the DVPA on the basis of a declaration or testimony that shows by a preponderance of the evidence "to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300, subd. (a); *Curcio v. Pels* (2020) 47 Cal.App.5th 1, 11.)

As relevant here, the DVPA defines domestic violence as abuse perpetrated against a person "with whom the respondent . . . has had a dating . . . relationship" or a person "with whom the respondent has had a child." (§ 6211, subds. (c), (d).) " 'Abuse' " under the DVPA includes not only physical abuse or injury, but also molesting, threatening, harassing, and engaging in conduct that "disturb[s] the peace of the other party." (§§ 6203, 6320; see, e.g., *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1419 [husband's acts of downloading and disseminating wife's text messages constituted abuse].) "Generally, a trial court has broad discretion in determining whether to grant a petition for a restraining order under this statutory scheme." (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 702.) The party seeking the DVRO bears the burden of demonstrating past abuse by a preponderance of the evidence. (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137.)

"[W]e review the trial court's issuance of a restraining order under the DVPA for abuse of discretion." (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 782 (*Nevarez*).)

6

On appeal, we presume that the court's order is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The appellant bears the burden of affirmatively demonstrating error and providing an adequate record on appeal. (*Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712.) To carry that burden, the appellant "must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287; Cal. Rules of Court, rule 8.204(a)(1)(B), (C).) The appellant must also show that the error was prejudicial. "Even when error is demonstrated, the judgment will not be reversed unless it is 'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162 (*Ribakoff*); see Cal. Const., art. VI, § 13.)

Marquez raises various arguments for reversing the trial court's order granting Castaneda's request for a permanent DVRO. As we explain, his arguments fail to demonstrate error.[3]

---

[3] Shortly after Marquez filed his opening brief, the DVRO expired on February 7, 2025. Generally, we do not decide cases that have become moot, which occurs " 'when the decision of the reviewing court "can have no practical impact or provide the parties effectual relief." ' " (*Steiner v. Superior Court* (2013) 220 Cal.App.4th 1479, 1485.) An appeal from an expired order is not moot, however, if it "could have consequences for [a party] in . . . future court proceedings." (*In re Cassandra B.* (2004) 125 Cal.App.4th 199, 209.) In *Cardona v. Soto* (2024) 105 Cal.App.5th 141 (*Cardona*), the court held that an appeal from an expired one-year DVRO was not moot because the rebuttable presumption in section 3044 was a "concrete legal consequence" for future custody proceedings. (*Id.* at pp. 148-149.) That presumption—which provides that "an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child"—is triggered by " ' "a finding of domestic abuse sufficient to support a DVPA restraining order." ' " (*Id.* at p. 148.)

*[footnote continued on next page]*

First, Marquez contends that the trial court violated his Second Amendment right to bear arms by issuing a DVRO that prohibits him from possessing firearms for a period of one year while the restraining order is in effect. He asserts that the firearm restriction will result in "the loss of my employment opportunities within the security industry" where "firearm rights are essential." We construe Marquez's challenge to be an "as-applied" constitutional challenge because he asserts the need for an exception to the restriction based on an individualized need to be able to secure work as an armed security guard. (*In re D.L.* (2023) 93 Cal.App.5th 144 [An as-applied challenge seeks relief " 'from a specific application of a facially valid statute or ordinance to an individual or class of individuals who are under [an] allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied.' "].) "Because an as-applied challenge asserts a 'constitutional defect [that] may be correctable only by examining factual findings in the record or remanding to the trial court for further findings' ([citation]), it is not appropriately raised for the first time on appeal." (*Zachary H. v. Teri A.* (2023) 96 Cal.App.5th 1136, 1144 (*Zachary H.*), citing *In re Sheena K.* (2007) 40 Cal.4th 875, 887; see *People v. Patton* (2019) 41 Cal.App.5th 934, 946 ["An as-applied constitutional challenge is forfeited unless

---

Moreover, the presumption is "mandatory, and it 'remains in effect for five years regardless of whether an underlying domestic violence restraining order has expired.' " (*Id.* at p. 148.) Because the continued application of the section 3044 presumption to Marquez in future custody proceedings could impact his ability to gain custody of L., we agree with *Cardona* that the appeal is not moot because "we could provide him with effective relief by reversing the DVRO." (*Cardona*, at p. 149.)

previously raised."].) Marquez forfeited his as-applied challenge by failing to raise it in the trial court.

But even if Marquez had not forfeited his challenge in the trial court, he has failed to demonstrate error on appeal by failing to support his challenge with analysis or citation to authority. We treat an argument as waived " ' "[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority." ' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) "The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.) These rules apply equally to represented litigants and self-represented litigants like Marquez. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; *Huang v. Hanks* (2018) 23 Cal.App.5th 179, 183, fn. 1.)

Second, Marquez argues that the trial court violated his Fifth Amendment right against self-incrimination because he was "unable to afford legal representation" at the February 8 hearing. He contends that if he had been represented by counsel at the hearing, he would have known to "plead the fifth and protect myself from self-incrimination." That argument fails because the Fifth Amendment does not apply in civil proceedings like the one here. By its plain terms, the Fifth Amendment applies to "any criminal case." (U.S. Const., 5th Amend.)

Marquez's third argument fails for the same reason. He contends that the trial court violated his Sixth Amendment right to appointed counsel and to "present all relevant evidence [and] secure witness testimony" to support his case. Like the Fifth

9

Amendment, the Sixth Amendment applies to criminal proceedings. (U.S. Const., 6th Amend.; see *People v. Otto* (2001) 26 Cal.4th 200, 214 [the Sixth Amendment does not apply "in civil proceedings"]; *In re Marriage of Tara and Robert D.* (2024) 99 Cal.App.5th 871, 887 [There is no due process right to counsel in dissolution proceedings.].) Moreover, Marquez does not cite to any portions of the record to support his claim of procedural unfairness, and he makes no effort to (1) explain how the trial court prevented him from presenting all of his evidence, or (2) identify what evidence he was prevented from presenting. " '[A]n appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim. The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record.' " (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162 (*Ribakoff*).) By failing to develop his argument or support it with citation to the record, Marquez has failed to carry his burden of demonstrating error. In any event, our review of the hearing transcript reveals that the trial court gave Marquez the opportunity to present evidence to oppose Castaneda's DVRO request and to support his DVRO request and repeatedly asked him if he had anything more to add.

Fourth, Marquez argues that the trial court's rulings on his and Castaneda's DVRO requests violated his Fourteenth Amendment rights. To support that claim, he asserts that he "faced discrimination based on [his] gender" and was "depriv[ed] of the same protections afforded to others in similar circumstances." Marquez's conclusory assertion is insufficient to satisfy his burden of developing and supporting his arguments

10

on appeal.  In any event, and putting aside the fact that the record contains no support for Marquez's claim of gender discrimination, the Fourteenth Amendment does not apply in this context.  The Fourteenth Amendment applies in circumstances where a " ' " ' "state has adopted a classification that affects two or more *similarly* situated groups in an unequal manner." ' " ' " (*Zachary H.*, *supra*, 96 Cal.App.5th at p. 1145.)  A trial court's ruling on a DVRO request is not such a classification, as it affects only the persons identified in the request.

Fifth, Marquez asks this court to review the DVRO request he filed against Castaneda because he believes it will "she[d] light on [Castaneda's] history of harassment and manipulation."  In addition, Marquez asserts that his rights were "potentially infringed" and asks us to "review the proceedings" and consider whether there was any "denial of [his] rights during the February 8th hearing."  As noted, it is Marquez's obligation as the appellant to demonstrate that the trial court erred, and he may not enlist our help in carrying that burden.  (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["We are not required to examine undeveloped claims or to supply arguments for the litigants."].)

Sixth, in a section entitled, "Impact on Career and Public Image" Marquez states that he is an actor "signed by a huge talent agency" and that he had "plans to participate" in a gameshow and "other high-profile shows and events that require a clean public image."  He complains that he was "very excited" to participate in the gameshow and "stood to win $150,000" but, "due to the screening order resulting from the restraining order, [he] was unable to proceed with this opportunity."  These statements do not

11

amount to a legally cognizable claim on appeal. Marquez fails to identify any error on the trial court's part; he merely expresses his concern over the practical ramifications of the restraining order.

Seventh, in a section entitled, "Attorney Misconduct," Marquez provides a list of various sections from the Penal Code, Code of Civil Procedure, Family Code, and Business and Professions Code that he claims Castaneda's counsel violated. We need not consider these claims because Marquez has not supported them with citation to the record or reasoned argument. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [Appellate courts need not address a "general assertion, unsupported by specific argument."].)

Finally, we note that, at various places in his brief, Marquez appears to challenge the sufficiency of the evidence supporting the DVRO. For example, under the heading "Sixth Amendment Violation," Marquez asserts that there was a "lack of evidence supporting the allegations against [him]" because "there is no video evidence or witness testimony implicating [him] in any wrongdoing," and the police report regarding the patio incident "clearly indicates that [Castaneda] was uncertain about the perpetrator's identity." Marquez's failure to assert a sufficiency of the evidence claim under a separate heading is grounds for us to treat the claim as forfeited. (See Cal. Rules of Court, rule 8.204(a)(1)(B) ["State each point under a separate heading or subheading summarizing the point . . . ."]; *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading."].) In any event, the claim fails on the merits because, by testifying that he dropped the television and displayed the condoms on Castaneda's patio

12

and sent her demeaning texts, Marquez admitted that he engaged in the conduct that the trial court found to qualify as abuse under the DVPA.

## DISPOSTION

We affirm the trial court's orders granting Castaneda's DVRO request and denying Marquez's.  Castaneda is entitled to costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

McKINSTER
Acting P. J.

RAPHAEL
J.

13